### RAMSEY v. HESSIG-ELLIS DRUG CO.

No. 1688. Opinion Filed March 19, 1912.

(122 Pac. 662.)

SALES—Construction of Contract—Return of Goods. Where a party ordered goods to be paid for in 30, 60, 90, 120 and 150 days, and the vendor agreed that in consideration of the fulfillment of the terms of the order and other agreements the vendee could return any goods remaining unsold at the end of the year, the vendee had a right to return the goods remaining unsold at the end of the year, although he had not paid the entire purchase price according to the terms of the order.

(Syllabus by Rosser, C.)

*Error from Pontotoc County Court;*
*Joel Terrell, Judge.*

Action by the Hessig-Ellis Drug Company against G. M. Ramsey. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Clinton A. Galbraith, Tom D. McKeown, John P. Crawford,* and *James W. Bolen,* for plaintiff in error.

*B. H. Epperson,* for defendant in error.

Opinion by ROSSER, C. The plaintiff, Hessig-Ellis Drug Company, sued the defendant, G. M. Ramsey, in a justice court in Pontotoc county. There was a judgment for the defendant, and the plaintiff appealed to the county court. In that court the jury, under the instructions of the court, very reluctantly returned a verdict for plaintiff, and the defendant has appealed to this court, assigning as error the action of the court in instructing the jury to find for the plaintiff.

The defendant, who was engaged in business at Ada, Okla., ordered from plaintiff certain drugs, consisting of preparations called "Muco Solvent," "Cuban Hair Restorer," "Melon Seed Tea," and other names more or less expressive of their efficacy in curing the various ills that "human flesh is heir to." At the time of making the order, the defendant signed one of plaintiff's printed forms of contract known as "Contract B," which appears to be a contract by the Hessig-Ellis Drug Company to advertise its goods in the vicinity of the place of business of the defendant for one year next following the delivery of the goods. Contract "B" provides that plaintiff shall advertise the goods in Ada to a certain amount, "said advertising to be executed during the twelve months following date of the delivery of goods described by order 'A' at Ada." It also contains the following printed provision:

"It is agreed by and between the parties of the first and second part, and is an element of this agreement, that if for any reason the party of the first part should default or commit any breach of this agreement, then it shall be at the option of the party of the second part to at once return all goods unsold at the full invoice price to the party of the first part, and the party of the first part, in event of such contingency, agrees to accept any unsold goods described by order 'A,' and will remit on receipt of same, and if for any reason the party of the second part should default in the terms of the agreement made this day and date, then, in that case, the party of the first part shall have a measure of damages against the party of the second part, the collection of the amount specified in order 'A,' together with claim for whatever advertising that may have been executed in the local paper or papers at Ada up to and inclusive of the date of default."

At the bottom of the printed contract, after the signature of the defendant, is written in ink the following:

"In consideration of the faithful fulfillment on the part of the party of the second part of the terms of order 'A' and contract 'B,' the party of the first part agrees to take back all goods remaining unsold in the hands of the party of the second part at full invoice price at the expiration of the Oklahoma advertising contract."

The order for the goods provided that they should be paid for, one-fifth in 30, one-fifth in 60, one-fifth in 90, one-fifth in 120, and one-fifth in 150 days. The goods were shipped about the last of January, 1908. Plaintiff seems to. have been of the impression that the terms of the printed form governed the written stipulation at the end of the contract, for it wrote a letter to the defendant on the 13th of February, 1908, an extract from which is as follows:

"So long as we advertise these goods in your state you have no privilege of returning any of them. A short sprint in advertising is foolhardy, and only from accumulated effect and hard plugging, we expect to get results. The first order, an expense; repeating orders, profitable. What's the use of relating these facts that are already made plain in your contract? Simply to arouse your idea and feeling of responsibility."

This is a fair sample of the whole letter, or probably fails to fully reflect the tone of the entire epistle. The defendant had made one payment prior to receiving this letter, but after he received it he did not remit for a considerable time, and it appears that he wrote the plaintiff in March, 1908, offering to send the goods back. Whether the contents of the letter, part of which is quoted above, led defendant to believe that he was dealing with people who would take advantage of him if they had an opportunity, and so alarmed him that he wanted to withdraw from the contract, does not appear from the record.

Plaintiff was mistaken as to the proper construction of the contract. By a familiar rule of construction the written stipulation governed the printed form where there was a conflict, and the. defendant had the right to return. the unsold goods at the end of the year whether plaintiff continued to advertise them or not. After the defendant wrote plaintiff, it made an effort to collect the entire account, but he refused to pay or to give a note, though there was evidence that at one time he offered to give a note for the full amount. He denied this. In January, 1909, he wrote the plaintiff remitting $120, and stated that he had exhausted his stock of Muco Solvent, but was still amply supplied with Hair Restorer and Melon Seed Tea, and stated

that this medicine did not sell very well, and be would rather return it. In reply the plaintiff wrote him a letter, a portion of which speaks for itself and is as follows:

"We must say that your letter is the most cheerful example of collossal assurance with which we have up to date been inflicted. * * * Your offer is an evidence of such sublime gall that in admiration of it, we haven't time to get angry and we therefore propose to treat you as we treat any perversely delinquent creditor. * * * These are our instructions to the attorney and he will have no difficulty in collecting the amount. In view of the fact that the sale has been very satisfactory, your case will probably be laughed out of court."

Defendant was entitled to credit for the goods unsold, provided he offered to return them within a reasonable time. The question of whether he had tendered the goods back in the proper time and manner is not raised, and plaintiff simply challenges the right to return them at all. Plaintiff contends that he is not entitled to credit for goods unsold because he did not pay for the goods in 30, 60, 90, 120, and 150 days, as provided in his order. But to so hold would be to enforce a penalty for the mere nonpayment of money. This will not be done unless there are peculiar circumstances making it just or equitable to do so in the particular case.

In this case the contract was that defendant should pay for the medicine within a certain number of days, and that all unsold goods at the end of the year could be returned at the invoice price. What circumstances are there in the case that require the enforcement of the forfeiture of the right to return the goods at the end of the year? The debt unpaid is capable of exact computation. If defendant had paid in full, as stated in the order, plaintiff would have been bound to take back the goods unsold and pay for them. The Melon Seed Tea was just as efficacious for the purposes for which it was manufactured, the Cuban Hair Restorer was not less nor more, but just as much, capable of changing shiny baldness into a luxuriant growth of hair at the expiration of the year as if the defendant had made his monthly payments. There is no reason why the strict for-

feiture of the right to return the goods should be enforced. The right to return the goods was a part of the contract. It is one of the mutual covenants of the contract, as binding on the plaintiff; as the other portions of the contract were upon the defendant. It was for the jury to ascertain the amounts and render a verdict under proper instructions. The fact that defendant, before the expiration of the year, offered to return the unsold goods did not affect his right to do so at the end of the year. *Robinson v. Fairbanks & Co.*, 81 Ala. 132, 1 South. 552.

The case should be reversed and remanded for a new trial.

By the Court: It is so ordered.